IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


HENRY C. HALL,

                    Petitioner,

          v.                         CASE NO.  13-3175-RDR

COLONEL SIOBAN LEDWITH,
Commandant, U.S.D.B.,

               Respondent.

<u>MEMORANDUM AND ORDER</u>

Petitioner is a military prisoner who was confined at the United States Penitentiary, Fort Leavenworth, Kansas, when he filed this pro se petition for writ of habeas corpus, 28 U.S.C. § 2241.[1]  Mr. Hall does not challenge his military convictions or sentence.  Instead, he challenges the computation of his remaining sentence following revocation of his military parole without credit for "work abatement time" he had earned prior to his release.  Respondent filed an Answer and Return.  Petitioner thereafter filed a Motion for Order for release, to which respondent filed a Response.  Having considered these pleadings together with all materials in the file, the court finds that petitioner fails to show that he exhausted all remedies

---

[1]     Mr. Hall has since been transferred to the "FCI Complex" at Beaumont, Texas, where he arrived on November 29, 2013.  He alleges that he does not know the reasons for his transfer and "all (he) can think of is it's because (he) had filed a complaint."  These bald allegations are not based upon any facts showing an improper motive and are purely speculative.  They are certainly not specific enough to evince a retaliation claim.  The court notes that in his grievances seeking restoration of his Earned Time, petitioner requested a transfer as an alternative form of relief.

1

available in the military courts or that none was available and that, in any event, he fails to allege a violation of federal constitutional or statutory law so as to be entitled to relief under § 2241.

**FACTUAL BACKGROUND**

Mr. Hall was a member of the United States Army when he was convicted in September 2005 by general court-martial of conspiracy to commit assault, violation of a lawful order, false official statement, maiming and assault. His convictions and sentence to confinement were affirmed by the Army Court of Criminal Appeals and the Court of Appeals for the Armed Services. Pursuant to a plea agreement, his confinement was limited to 10 years. Petitioner served several years of his sentence at the USDB during which he earned Good Conduct Time (GCT) as well as work-related abatements. The Army Clemency and Parole Board (ACPB) approved him for parole and he was conditionally released in July 2010. In May 2013, the ACPB revoked petitioner's parole and he was returned to confinement. He does not challenge the revocation of his parole.

Upon his return to the USDB, petitioner's sentence was recalculated, and he received an updated computation sheet containing his new sentence and minimum release date. He was granted credit for over 22 months of "street time" from the date

of his parole release.   However, "all abatement credits earned prior to his release on parole" were considered forfeited.   In September 2013, by way of "Inmate Request Slip" (hereinafter "IR") directed to the USDB Commandant, Mr. Hall requested restoration of his forfeited "Earned Time/Work Abatement" and claimed that restoration of this credit would entitle him to immediate release.   Mr. Escobedo responded, that "[p]risoners who accept parole shall waive all good conduct time (also referred to as earned time and special earned time) earned up to the date of release on parole."   Docs. 1-1 at 1 and 7-2 at 1.

**CLAIMS**

Petitioner does not challenge the forfeiture of his GCT. His only challenge is to the forfeiture of his non-GCT abatement credits, referred to by him as "earned time abatement secured through work performance" (hereinafter "WAT").[2]   *Petition* (Doc. 1) at 4.[3]   He asserts that forfeiture of his WAT was improper and that his due process rights were violated as a result. Petitioner bases his claim that his WAT was improperly forfeited

---

[2]   For reasons apparent later herein, the court in this Memorandum and Order refers to the specific type of abatement credit sought by petitioner as work abatement time (WAT).   The court refers to what appears to be a more general catch-all category of non-GCT abatements, into which WAT falls, as Earned time (ET).

[3]   Respondent states that prior to release on parole, Mr. Hall had accumulated 210 days of "work abatement credit" and 1200 days of GCT.   A&R (Doc. 7) at 7.   Petitioner provides no figures.

on two arguments that are often confused and therefore confusing. First, he contends that the parole agreement was violated because therein he agreed to waive his GCT and his "Extra Good Conduct Time" (EGCT) but not his ET, and that this agreement was binding upon the ACPB as well as him. Secondly, he argues that "all the regulatory guidance" defined GCT "as a deduction of days from a prisoner's release date for good conduct," while "earned time" (ET) was defined as "the abatement earned by prisoners through work performance"[4] and as a reduction in his sentence, which is not subject to forfeiture. In support of the latter argument, petitioner alleges that "these guidelines" neither defined WAT nor made it subject to forfeiture.

Petitioner does not specify in his petition what relief he seeks from this court. In his IRs he sought restoration of all

---

[4]    Petitioner does not cite regulations in his petition, and the court might simply hold that he provides no authority for his claim. Instead, the court has considered petitioner's two attachments as part of his petition. In the attached copy of his IR addressed to the Commandant (Doc. 1-1 at 1), he argued that nothing in the "regulatory guidance" mentioned his waiving "Earned Time." He then cited "AR 190-47, DODI 1325.7, and AR 15-130." He discussed the cited authorities as follows. AR 190-47 defined ET as "the abatement earned by prisoners through work performance, program participation, or extraordinary achievements, which is used to reduce sentence to confinement;" and GCT as "[r]egulatory deduction from a definite term of sentence awarded to a prisoner for good conduct;" and that DODI 1325.7 likewise defined ET as "a deduction of days from a prisoner's release date earned for participation and graded effort in the areas of work, in part," and GCT as "a deduction of days from a prisoner's release date for good conduct and faithful observance of all facility rules and regulations." He also stated that "DODI 1325-M Sentence Computation Manual provided the very same definitions" for GCT and WAT "as the DODI 1325.7 dated July 17, 2001." Finally, he added "at 6.17.9.4 states prisoner's (sic) who accept parole shall waive all Good Conduct Time and Extra Good Time earned up to the date of release on parole." Doc. 1-1 at 1-2.

4

the WAT earned by him prior to his release on parole and his immediate release.

## GENERAL STANDARDS

Habeas corpus relief is available under 28 U.S.C. § 2241(c)(3) to prisoners who are in custody "in violation of the Constitution or laws or treaties of the Unites States." "Good time credit for satisfactory behavior while in (military) prison is not a constitutional, statutory or inherent right." *U.S. v. Rivera-Rivera,* 19 M.J. 971, 972 (A.C.M.R. 1985)(citing *Hewitt v. Helms*, 459 U.S. 460 (1983)).

## ANALYSIS

1. ***Failure to Exhaust Military Court Remedies***

   a. ***Standards***

The Tenth Circuit discussed the general principles of exhaustion applicable to claims by military prisoners in *Roberts v. Callahan*, 321 F.3d 994, 995 (10th Cir.) *cert. denied*, 540 U.S. 973 (2003):

> The federal civil courts have limited authority to review court-martial proceedings. *Burns v. Wilson*, 346 U.S. 137, 142, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). If the grounds for relief that Petitioner raised in the district court were fully and fairly reviewed in the military courts, then the district court was proper in not considering those issues. See *id.*; see also *Lips v. Commandant, United States Disciplinary Barracks*, 997 F.2d 808, 811 (10th Cir.

> 1993).   Likewise,  if  a  ground  for  relief  was  not
> raised  in  the  military  courts,  then  the  district  court
> must deem that ground waived.   See *Watson v. McCotter*,
> 782 F.2d 143, 145 (10th Cir. 1986).

See *Lips*, 997 F.2d at 812.   Under *Burns* and *Roberts*, this court

may  not  review  a  military  prisoner's  claims  if  those  claims

received  full  and  fair  consideration  by  the  military  courts  or

petitioner  failed  to  present  his  claims  to  the  military  courts.

In   his   petition,   Mr.   Hall   states   that   he   sought

administrative  relief.   However,  he  alleges  no  facts  to  show

that  he  sought  relief  in  the  military  courts.   In  the  A&R,

respondent  alleges  that  there  is  "no  indication"  petitioner

sought  relief  in  the  military  courts.   Respondent  acknowledges

this  court's  previous  holdings  that  review  of  habeas  claims  is

available  in  the  military  courts,  but  concentrates  all  effort  in

the  A&R  on  arguing  that  Mr.  Hall  fails  to  state  a  claim  for

relief.   This  court  is  aware  of  the  argument  made  at  times  by

the  Government  to  the  effect  that  military  appellate  courts  lack

the  authority  to  review  habeas  corpus  claims.   If  the  military

courts  lack  power  to  grant  relief  in  this  habeas  corpus  case,

then  exhaustion  of  military  court  remedies  cannot  be  required.

Mr.  Hall's  challenge  to  the  denial  of  certain  abatement

credits  during  the  re-computation  of  his  military  sentence  is  a

challenge  to  the  execution  of  that  sentence.   In  the  Army,  GCT

is  authorized  by  regulation.   *Rivera-Rivera*,  19  M.J.  at  971.

The excerpts of the applicable regulations cited later herein make it plain that the same is true of ET.  The responsibility for determining how much GCT and/or ET will be awarded is administrative and is vested in the commander of the confinement facility.  See *e.g.*, *U.S. v. Spaustat*, 57 M.J. 256 (C.A.A.F. 2002); *Rivera-Rivera*, 19 M.J. at 972.  Likewise, the effect of abatement credit awarded during military imprisonment on sentence computation is clearly a matter of administrative determination.  Administrative determinations regarding the execution of a military sentence should be subject to review for abuse by the military appellate courts and have in fact been reviewed in military courts by way of "a petition for extraordinary relief."  See e.g., *Loving v. U.S.*, 62 M.J. 235, (U.S.A.F. 2005)("The writ of habeas corpus is available to the military accused and may be filed in (the U.S.A.F.) under the All Writs Act, 28 U.S.C. § 1651(a), because the Supreme Court has expressly addressed this issue and blessed our issuing the "Great Writ.")(citing *Noyd v. Bond*, 395 U.S. 683 (1969)); *U.S. v. Torres-Rodriguez*, 40 M.J. 872, 874 (N.M.C.M. 1994); *U.S. v. Krenn*, 12 M.J. 594, 596 (A.C.M.R. 1981)([T]he Court of Military Appeals has not hesitated to inject itself into what would nominally be considered administrative matters pertaining to service of sentence when an accused has been prejudiced by improper Government action.")(citing Article 66(c), U.C.M.J.;

*U.S. v. Richardson*, 8 M.J. 157, 158-59 (C.M.A. 1980); *U.S. v. Hagler*, 7 M.J. 944, 949 (N.C.M.R. 1979)(challenging revocation of good conduct time as violation of due process requirements); *U.S. v. Campagna*, 6 M.J. 658 (N.C.M.R. 1978)(challenging constitutionality of graduated good-time sentence credit); *U.S. v. Corl*, 6 M.J. 914, 917 (N.C.M.R.)(same), *aff'd*, 8 M.J. 47 (CMA 1979); *U.S. v. Larner*, 1 M.J. 371 (C.M.A. 1976); *Kelly v. U.S.*, 1 M.J. 172 (C.M.A. 1975); see also *Spaustat*, 57 M.J. at 263 (citing see generally *United States v. Wilson*, 503 U.S. 329, 337 (1992)(review of pretrial confinement credit); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)(review of good time determination)). The United States Supreme Court squarely addressed this issue decades ago in *Noyd v. Bond*:

> We now turn to consider whether petitioner could properly seek his release in civilian courts without making any effort to invoke the assistance of the courts within the military system. *Gusik v. Schilder*, 340 U.S. 128 . . . (1950), established the general rule that habeas corpus petitions from military prisoners should not be entertained by federal civilian courts until all available remedies within the military court system have been invoked in vain. Mr. Justice Douglas, for a unanimous Court, explained some of the important reasons which require civilian courts to respect the integrity of the military court system that Congress has established . . . .
>
> * * *
>
> When after the Second World War, Congress became convinced of the need to assure direct civilian review over military justice, it deliberately chose to confide this power to a specialized Court of Military Appeals, so that disinterested civilian judges could

gain over time a fully developed understanding of the
distinctive problems and legal traditions of the Armed
Forces.

Almost one year before petitioner sought habeas corpus
relief from the Federal District Court sitting in New
Mexico, the Court of Military Appeals had held that it
would, in appropriate cases, grant the relief
petitioner now demands from us. *Levy v. Resor*, 17
U.S.C.M.A. 135, 37 C.M.R. 399 (1967)(footnote
omitted). Petitioner, however, has made no effort to
invoke the jurisdiction of the Court of Military
Appeals. Nevertheless, he would have civilian courts
intervene precipitately into military life without the
guidance of the court to which Congress has confided
primary responsibility for the supervision of military
justice in this country and abroad.

Petitioner emphasizes that in the present case we are
not called upon to review prematurely the merits of
the court-martial proceeding itself. Instead, we are
merely asked to determine the legality of petitioner's
confinement while he is exercising his right of appeal
to the higher military courts. It is said that there
is less justification for deference to military
tribunals in ancillary matters of this sort. We
cannot agree. All of the reasons supporting this
Court's decision in *Gusik v. Schilder*, supra, are
applicable here. If the military courts do vindicate
petitioner's claim, there will be no need for civilian
judicial intervention. Needless friction will result
if civilian courts throughout the land are obliged to
review comparable decisions of military commanders in
the first instance. Moreover, if we were to reach the
merits of petitioner's claim . . , we would be obliged
to interpret extremely technical provisions of the
Uniform Code which have no analogs in civilian
jurisprudence, and which have not even been fully
explored by the Court of Military Appeals itself.
There seems little reason to blaze a trail on
unfamiliar ground when the highest military court
stands ready to consider petitioner's arguments
(footnote omitted).

*Id.* at 693-97. The Supreme Court concluded:

Since petitioner has at no time attempted to show that

> prompt and effective relief was unavailable from the
> Court of Military Appeals in his case, we hold that
> petitioner's failure to exhaust this remedy before
> seeking the assistance of the civilian courts is not
> excused.

*Id.* at 698; see also *U.S. v. Denedo*, 556 U.S. 904, 914
(2009)(citing Courts of Criminal Appeals Rule of Practice and
Procedure 2(b) as recognizing N.M.C.C.A. discretionary authority
to entertain petitions for extraordinary writs).

### b. *Discussion*

Petitioner alleges that he utilized administrative remedies
available at the USDB.[5]  However, he makes no mention of having
litigated a petition for extraordinary relief in the military
courts that raised his claim of improper forfeiture of WAT.  He
does not claim or show that that there was no review available
for his claim in the military court system.  The court concludes
pursuant to *Roberts* that petitioner has waived his right to this
court's review of his claim.  See also, *Watson v. McCotter*, 782
F.2d 143, 145 (10th Cir.) *cert. denied*, 476 U.S. 1184 (1986).
However, even if petitioner's claim were not waived by his

---

[5]    Petitioner does not even establish that he fully exhausted all
administrative remedies available in the military.  It has been held that
when a military "prisoner is denied parole, appeal is available through the
Commander of the facility of confinement, then to the Clemency and Parole
Board, and then to the designated Secretarial appellate authority."  See
*Miller v. Air Force Clemency and Parole Bd.*, 2011 WL 4402497 (D.Md. 2011),
*aff'd,* 472 Fed.Appx. 210 (4th Cir. 2012); *Clinton v. Goldsmith*, 526 U.S. 529,
530 (1999)(The Board has authority to provide administrative review of the
action challenged by petitioner, and a servicemember claiming something other
than monetary relief may challenge the Board's decision to forfeit earned
time as final agency action under the Administrative Procedure Act.).

failure to raise it in the military courts, this court finds for the following reasons that his claim has no merit.

2.  ***Failure to State a Claim under 28 U.S.C. § 2241***

    a.  ***Applicable Regulations and Documents***

In support of the A&R, respondent exhibits copies of the "Parole Agreement" and the "Addendum to Parole Certificate" signed by Mr. Hall prior to his conditional release (Doc. 7-2 at 30-32).  The Parole Agreement provided that the Certificate of Parole "shall not become operative until" the "conditions" listed therein "are agreed to by the inmate."  Those conditions included: "n.  . . .by accepting parole I waive all good conduct time earned up to my parole release date."  *Id*. at 30.  The "Addendum to Parole Certificate" sets forth additional conditions, which were each initialed by Mr. Hall.  Of particular import is condition (6): "I agree that by accepting parole, I waive all good conduct time and extra good time earned up to my parole release date."  *Id*. at 32.

Respondent contends that Army Regulation (hereinafter "AR") 633-30, Military Sentences to Confinement, controls the computation of a violator's sentence upon revocation of parole, and provides a copy of this regulation (*Id*. at 52-54). Respondent's position is supported by AR 15-130, Army Clemency and Parole Board, which "prescribes the procedures by which the

(ACPB) makes recommendations and parole determinations." *Id*. at 56. Sec. 4-5(a) of this regulation governs parole revocation and provides in pertinent part: "Computation of any sentence remaining to be served will be done in accordance with applicable provisions of this regulation and other Army regulations (ARs), primarily AR 633-30." *Id*. at 57. Petitioner argued in his exhibited IR that this AR 633-30 is "obsolete" and void. However, he provided no factual or legal basis whatsoever for his position.

AR 633-30, by its own terms, "prescribes procedures for the computation of sentences to confinement of persons subject to the Uniform Code of Military Justice serving sentences in the custody of the Department of the Army or Air Force." *Id*. at 53. It therefore expressly applies to petitioner who at all relevant times was confined in a military institution. AR 633-30 provides that "commanding officers of confinement facilities will exercise close and continuing command supervision over the computation of sentence expiration dates." *Id.* The following definitions are set forth in this regulation under the general heading "Abatements." AR 633-30 (Sec. 2(a)). "Good conduct time" is defined as "[a]ny deductions from the term of a sentence for good conduct." *Id*., (a)(1). "Extra good time" is defined as "[a]ny deductions from the term of a sentence which may be earned for actual employment in assignments for which

12

extra good time has been approved." *Id.*, (a)(2). "Minimum release date" is defined as the "maximum release date reduced by the actual number of days of abatement credited on the sentence and further adjusted by forfeitures of abatement, where applicable." *Id.*, (f). Both GCT and Extra good time are again included under the general heading of "Abatements" in AR 633-30(6), which governs computation of these credits. *Id.* at 54. Subsection (a)(1) provides that "abatement of sentence for good conduct will be credited according to" the rates specified. Subsection (b)(1) provides that a prisoner in a disciplinary barracks "may earn extra good time for employment in industries, work projects, or other activities or assignments at the rates and under the conditions prescribed in AR 190-47." *Id.* Subsection (b)(3) provides: "All extra good time earned while serving a sentence to confinement will reduce the period of time to be spent in confinement under that sentence on an actual day basis."

AR 190-47 is also exhibited by respondent.[6] AR 190-47 governs the Army Corrections Systems and its policies. Sec. 5-8 "Prisoner compensation" provides that "[prisoners] may be

---

[6]     Respondent exhibits pertinent provisions of AR 190-47 that became effective in 1996 as well as revisions effective in 2006 (see Doc. 7-2 at 44) and alleges that all provisions relied upon by respondent are currently effective. The court has examined the provisions and finds or example, Sec. 5.7 Prisoner Compensation (1996) is not significantly different from Sec. 5.8 Prisoner Compensation (2006). For this reason, the court does not include the dates of each section cited.

compensated for demonstrated excellence in work." Doc. 7-2 at 44. Sec. 5-8(c) entitled "Earned time (ET) abatement,"[7] provides that "Facility commanders can grant ET as an additional incentive . . . to prisoners who demonstrate excellence in work, educational and or vocational training pursuits," and that "[w]ork evaluations will be used to award ET." *Id.* at 45. Sec. 5-8(d) "ET computation" provides the rates for determining ET "for actual work in assignments for which ET has been authorized." Sec. 5-8(e) provides that ET credit "must be earned and allowed per this regulation." Sec. 5-8(f)(1) provides that "the forfeiture and restoration of ET will be per AR 633-30."[8] *Id.*

Respondent also exhibits DoD 1325.7-M, Sentence Computation Manual (Effective July 15, 2006). Doc. 7-2 at 62. He cites ¶ C2.1.1.1, which provides that a prisoner's maximum release date "can only be affected if there is a reduction of the sentence to confinement or if street time credit is disapproved following

---

[7]     In the 1996 version of AR 190-47, this same abatement credit was referred to as "Extra good conduct time" (EGCT) rather than "Earned time" (ET) abatement. The remainder of Sec. 5-8(c) is the same as Sec. 5-7(b) in the 1996 version. Throughout the 2006 revision, the main change in the sections on this other-than-GCT credit is the use of the term "ET" in place of "EGCT."

[8]     Sec. 5-8(f)(2) provides that:

    An additional abatement may be authorized for participation in community service programs, over and above that which is normally scheduled; special projects supportive of institutional goals or missions; or other activities as specifically designated, in writing, and approved by the facility commander.

*Id.*

revocation of parole . . ."  *Id.* at 64.   In addition, he cites ¶
C2.1.1.2, which provides that the "awarding and forfeiture of
GCT and earned time (ET) are "events that affect the MRD" (a
prisoner's minimum release date).[9]

### b.  Discussion

Now that the pertinent documents and applicable military
regulations are before it, this court has no difficulty finding
that petitioner's arguments are utterly baseless.   His argument
that he waived GCT and "extra good conduct time" in the parole
agreement but not WAT or ET has no merit.   Mr. Hall implies that
earned time/ET in the 2006 revision of AR 190-47 is not the same
as extra good conduct time/EGCT in the 1996 version when he
argues that he waived EGCT in the agreement but not his WAT or
ET.   On the other hand, petitioner acknowledges that his WAT is
the same as, or at least a part of, ET.   Respondent convincingly
argues based on the regulations that ET is synonymous with EGCT.
In the 1996 version of AR 190-47 EGCT may be granted by the
commander "to prisoners who demonstrate excellence in work,
educational and or vocational training pursuits."   Doc. 7-2 at
61.   This exact language is used to describe "Earned time (ET)"
in the 2006 revision.   *Id.* at 45.   GCT and ET are defined

---

[9]      The acronyms MXRD and MRD are not defined in the excerpt from the
manual provided by respondent, but the court accepts respondent's indication
of their meanings.

together in the current regulations under "abatements."  Mr. Hall alleges no facts that discredit the Army's interpretation of EGCT as synonymous with ET in its regulations.  Nor does he suggest how this interpretation violates either federal constitutional or statutory law.  The court concludes that WAT is an abatement like GCT, that WAT is the same as or a part of ET; and that EGCT is simply another term for ET.

     Petitioner's claim likely arises because the Army regulations do not clearly reference and define Work Abatement Time.  Instead, various terms are used to refer to other-than-GCT credit by both respondent and petitioner.[10]  As can be seen in the Army's regulations cited herein, non-GCT credit has been referred to as "Extra Good Conduct Time" and "Extra good time" and in revisions as "Earned time (ET) abatement."  None of these terms is well-defined as to what types of non-GCT it includes.  Nor are the names or acronyms used for them particularly descriptive.  In any event, it is clear that petitioner's WAT is

---

[10]     In his two IRs alone, petitioner refers to his work-related credit as "extra good time", "Earned Time", "Earned Time also called Work Abatement", "Work Abatement", and "Earned Time/Work Abatement".  The Commandant's delegate responding to petitioner's second IR referred to it as "special earned time."  In the A&R, respondent refers to it as "abatement credit", "earned time abatement accrued through work performance", "extra good conduct time", "earned time", "work abatement credit", "earned time abatements", "earned abatement days" and "extra good conduct time".  Various terms are also used in the Army's regulations.  This lack of clearly-defined terms and logical, descriptive names and acronyms for the various abatements that may be earned by military inmates allowed Mr. Hall a glimmer of hope that he had not waived his WAT, but had only waived EGCT, which he believed was a different type of abatement.

among the non-GCT abatements that are "special", or "other", or "extra", as they were earned for work performance rather than general good behavior during confinement.[11]

Petitioner's argument that his WAT or ET decreased his sentence has no legal merit. Petitioner does not deny that the parole agreement provided that "by accepting parole" he "waived all good conduct time earned up to" his parole release and that the addendum provided that "by accepting parole" he "waive(d) all good conduct time and extra good time earned up to his release date." Nevertheless, he claims that his waivers are somehow inapplicable to ET. Respondent convincingly counters, based on DOD 1325.7-M, that "ET is subject to forfeiture." Respondent shows that petitioner received the full benefit of his ET when it was used in determining his minimum release date (MinRD) which, in turn, favorably impacted the time of his release on parole. The court fully concurs with respondent's position. When Mr. Hall was granted parole, he was released from confinement (albeit with conditions) earlier than if he had not received credit for ET. Petitioner, in effect, lost the positive impact of his ET when his parole was revoked, and he received due process during parole revocation proceedings. Respondent correctly points out that under the applicable

---

[11]   What is not at all clear is whether or not there are other types of extra or special abatements that are included in the catch-all category ET so as to necessitate its very generic label of "earned time". However, none is at issue in this case except the work abatement.

17

regulations, petitioner's ET, like his GCT, did not have the effect of decreasing the full term of confinement set during court-martial proceedings.  Instead, his ET only affected his MinRD prior to parole.  Respondent is correct that Mr. Hall provides no analysis as to why ET should be treated differently upon parole violation than other GCT and non-GCT abatements. Petitioner cites no regulation, and none is found among the excerpts exhibited by respondent, providing that any abatement is a vested right to be carried over and automatically re-applied when calculating a parole violator term.  See *Johnson v. Army Clemency & Parole Board,* Army Misc. 9701522 (A.C.C.A., Nov. 12, 1997)(unpublished)(citing Army Reg. 633-30 (para. 2e)(1974))("Abatement includes good conduct time and extra good time earned.").

The parole agreement in this case provided that Mr. Hall's term of parole would expire on December 9, 2014 (Doc. 7-2 at 29), which was his maximum release date as determined by his court-martial sentence.  Respondent explains that petitioner's maximum release date was calculated without benefit of any abatement credit. A&R (Doc. 7) at 10.  As noted, the DoD Sentence Computation Manual provides that a "prisoner's maximum release date 'can only be affected if there is a reduction of the sentence . . . or if street time is disapproved following revocation of parole."  Respondent's position is in full accord

with this court's understanding of the general effect of abatement credits awarded on the basis of behavior during confinement.  This court has previously held that accumulation of abatement credits affects when a prisoner may be conditionally released, but they have "no further effect once an inmate accepts parole." *Noreen v. U.S. Army Clemency and Parole Bd.*, 2005 WL 1027097, *3 (D.Kan. Apr. 27, 2005).  This court also previously held in *Huschak v. Gray*, 642 F.Supp.2d 1268, 1273 (D.Kan. 2009):

> In return for release on parole, the inmate volunteers to waive any credit against his sentence for good time up to the date of release on parole.  If the inmate violates his conditions of parole, then he may be returned to confinement to serve the remainder of his sentence. . .

*Id.*  As noted by respondent, the Tenth Circuit Court of Appeals long ago upheld the forfeiture of good time credit after the revocation of parole.  See *Patterson v. Knowles*, 162 F.3d 574 (10th Cir. 1998)(and cases cited therein)(the U.S. parole commission was "free to 'recommit a parole violator to prison for a length of time the same as the unexpired term' without taking into account good time credit earned prior to parole release," and "petitioner was not entitled to a reduction in his parole violator term based upon the good time he accumulated prior to his release on parole.").  In *Sanders v. Nickels*, 2000 WL 134466 (D.Kan. 2000) this court held:

> It also has long been accepted (military) policy that
> a violation of parole can result in revocation, a
> denial of street time credit, and confinement for the
> remainder of the full term calculated from the date of
> release on parole. This interpretation of its
> regulations by the military is not shown to violate
> any enabling statute or constitutional right.

*Id.* at *5. Just as in *Patterson* and *Sanders*, the court finds here that the agency's interpretation of its regulations is a "permissible construction" of the abatement or earned time provisions. Here as in *Sanders*, petitioner's interpretations of military regulations "are simply contrary to the agency's interpretations and application and are not required by the language of those regulations." *Id.* The military's interpretation of its regulations is entitled to deference. *Id.* All of petitioner's abatement credits earned prior to his parole release were properly forfeited under the applicable Army regulations, and the re-computation of his sentence is not shown to be erroneous or unlawful in any manner. It necessarily follows that petitioner's claim that his sentence expired is without factual or legal merit.

This court and other courts have found in prior cases that parole regulations which operated to negate the impact of earned good conduct abatements upon a sentence of confinement did not violate the Constitution. See *Patterson*, 162 F.3d at 574; *Young v. Nickels*, 59 F.Supp.2d 1137 (D.Kan. 1999)(military regulation requiring release of prisoner at the expiration of sentence to

confinement less good time is not inconsistent with confinement of prisoners whose parole has been revoked); *Noreen*, 2005 WL 1027097 at *3 (accumulation of good time positively affects when a prisoner may be conditionally released, but has no further effect once an inmate accepts parole); *Sanders*, 2000 WL at 134466 (repeating holding of *Young*).   On the basis of the authority cited herein and the foregoing analysis, this court concludes that petitioner was not deprived of his Work Abatement Time or Earned Time without due process, that he had no liberty interest in abatement credit that was denied, and that he fails to state a claim for relief under 28 U.S.C. § 2241.

**IT IS THEREFORE ORDERED** that petitioner's Motion for Order (Doc. 9) is denied.

**IT IS FURTHER ORDERED** that this habeas corpus petition filed pursuant to 28 U.S.C. § 2241 is denied.

**IT IS SO ORDERED.**

**DATED:  This 26th day of October, 2014, at Topeka, Kansas.**

**s/RICHARD D. ROGERS**
**United States District Judge**